OPINION
On May 12, 2000, the State of Ohio, Department of Public Safety/Liquor, mailed a notice to STJ Entertainment, LLC, dba Mark's Pub ("STJ"), of a hearing before the Liquor Control Commission ("commission"). The purpose of the hearing was to determine whether STJ's permit(s) should be suspended or revoked, or forfeiture ordered, for the following alleged violations:
 Violation #1-On, February 3, 2000, your agent and/or employee, MARK TABONE did sell in and upon the permit premises, beer to HEATHER GRANT who was then and there under 21 years of age-in violation of Section 4301.69 of the Ohio Revised Code.
 Violation #2-On, February 3, 2000, your agent and/or employee, MARK TABONE did furnish in and upon the permit premises, beer to HEATHER GRANT who was then and there under 21 years of age-in violation of Section 4301.69 of the Ohio Revised Code.
 Violation #3-On February 3, 2000, your agent and/or employee, MARK TABONE and/or your unidentified agent and/or employee, did allow RYAN SPAHN and/or BRANDON COLE who were then and there under 21 years of age to possess and/or consume beer on your permit premises-in violation of Section 4301.69(B) of the Ohio Revised Code.
By way of brief background, STJ owned a bar, Mark's Pub, in Bowling Green, Ohio, near Bowling Green State University. On February 3, 2000, two agents of the Ohio Department of Public Safety entered Mark's Pub and soon thereafter observed what appeared to be underage drinking by several persons. The persons were indeed underage, and STJ was subsequently charged with the violations as alleged above.
On June 8, 2000, a hearing was held before the commission. On June 27, 2000, the commission's order was mailed to STJ. The order stated that the first violation was dismissed upon the motion of the attorney general and that STJ had denied the second and third violations. The commission found STJ had violated R.C. 4301.69 as charged in Violation Nos. 2 and 3. The commission revoked STJ permit(s), effective July 18, 2000. STJ filed a motion for reconsideration, which the commission denied on July 20, 2000.
STJ appealed the commission's order to the Franklin County Court of Common Pleas. The parties submitted briefs and on April 30, 2001, the common pleas court rendered a decision and judgment entry affirming the commission's order.
STJ (hereinafter "appellant") has appealed to this court, assigning the following error for our consideration:
 THE LOWER COURT ERRED IN FINDING THAT THE DECISION OF THE OHIO LIQUOR CONTROL COMMISSION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE WITH LAW.
In reviewing the commission's order in an R.C. 119.12 appeal, a court of common pleas is required to affirm if the order is supported by reliable, probative and substantial evidence and is in accordance with law. VFW Post 8586 v. Ohio Liquor Control Comm. (1998), 83 Ohio St.3d 79,81. In Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571, the Supreme Court of Ohio set forth the definitions of "reliable", "probative," and "substantial" evidence. "Reliable" evidence is dependable; that is, it can be confidently trusted, "probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue, and "substantial" evidence is evidence with some weight; it must have importance and value. Id.
The determination of whether an agency order is supported by reliable, probative and substantial evidence involves essentially a question of the absence or presence of the requisite quantum of evidence. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111. This determination inevitably involves a consideration of the evidence and to a limited extent would permit the substitution of judgment by the common pleas court. Id.
In undertaking this hybrid form of review, the common pleas court must give due deference to the administrative resolution of evidentiary conflicts; however, the findings of the agency are by no means conclusive. Id. An agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless the court determines that the agency's findings are internally inconsistent, impeached by the evidence of a prior inconsistent statement, rest on improper inferences or are otherwise unsupportable. VFW Post 8586 at 81. The common pleas court may consider the credibility of competing witnesses as well as the weight and probative character of the evidence. Vesely v. Liquor Control Comm. (Mar. 29, 2001), Franklin App. No. 00AP-1016, unreported, citing Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, paragraph one of the syllabus.
While it is incumbent on the common pleas court to examine the evidence, this is not the function of the court of appeals. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. This court determines only if the common pleas court abused its discretion, which encompasses not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency. Id. Absent such an abuse of discretion, this court may not substitute its judgment for that of the agency or common pleas court. Id.
Appellant first contends that the record did not support a finding of Violation No. 2, i.e., that its agent/employee furnished an underage person a beer in violation of R.C. 4301.69. R.C. 4301.69 states, in pertinent part:
 (A) * * * [N]o person * * * shall furnish [beer or intoxicating liquor] to an underage person * * *.
The evidence as to Violation No. 2 was conflicting. John Campbell, one of the agents at the bar on February 3, 2000, testified that shortly after entering the premises, he observed two youthful-looking females standing at the bar area. (Tr. 7.) One of these females was Heather Grant, who was 20 years old. Id. at 7, 18. Agent Campbell stated that he observed Ms. Grant standing at the bar, that the bartender placed 12-ounce bottles of beer on the bar, that Ms. Grant then possessed the beer, took a couple of drinks from it and started to walk away from the bar. Id. at 7-8. He stated that he saw Ms. Grant pick up the beer from the bar. Id. at 8. As Ms. Grant moved away from the bar, Agent Campbell identified himself to her. Id. He noticed that Ms. Grant had been stamped "high," indicating that she was over twenty-one years of age. Id. at 8, 19. Ms. Grant showed Agent Campbell her driver's license, which indicated she was not twenty-one years old. Id. at 8-9.
Ms. Grant told Agent Campbell that she had not picked up a bottle of beer from the bar and that she had gotten it from another person. Id. at 13. Agent Campbell again testified that he had seen the bartender put the bottle of beer on the bar for Ms. Grant and that she then picked it up. Id. at 16.
Ms. Grant testified that she had been in the bar for two minutes prior to being approached by the officers. Id. at 20. Ms. Grant testified that she walked toward a booth, stood there, and that "* * * a couple of people that were there with us went up and got drinks and brought it back and handed it to us." Id. at 20, 22. She took one drink of the beer, and the officer approached her and identified himself. Id. at 22. Ms. Grant testified that she did not get a beer from the bartender, Mark Tabone, and that she was never within ten feet of the bar. Id. at 20, 25.
Shannon Grant, Heather's sister, accompanied her to the bar that night. Shannon was twenty-one years old at the time. Id. at 50. Shannon testified that a "guy" they knew passed beer back to them. Id. Heather had the beer "not even a minute" when the agent came up to them. Id. at 53.
Mark Tabone, a bartender on duty that night, had seen Heather and her sister at the bar prior to the night in question. Id. at 67. On a previous date, he had asked Heather to leave because she had been drinking. Id. at 67, 78-79. Mr. Tabone testified that he had not seen the Grant sisters on the night in question until the agent confronted him. Id. at 67. Mr. Tabone testified that he told the agent he had not served Heather and had not seen her drinking. Id. at 62.
Given the conflicting testimony above, the common pleas court did abuse its discretion in affirming the commission's order with regard to Violation No. 2. As indicated above, the common pleas court must give due deference to the administrative resolution of evidentiary conflicts. In addition, the common pleas court may weigh the credibility of competing witnesses. Obviously, both the commission and the common pleas court believed Agent Campbell's testimony of what occurred. There is no basis for this court to second-guess these conclusions.
Appellant next contends that the record fails to establish Violation No. 3, i.e., that the bartender, Mr. Tabone, knowingly allowed two underage persons to possess or consume beer in violation of R.C.4301.69(B). R.C. 4301.69 states, in pertinent part:
 (B) No person who is the owner or occupant of any public or private place shall knowingly allow any underage person to remain in or on the place while possessing or consuming beer or intoxicating liquor * * *.
Appellant asserts that the common pleas court erroneously applied a constructive knowledge standard to the violation under R.C. 4301.69(B) when such provision requires actual knowledge. R.C. 4301.69(A), discussed above, is a strict liability provision, while R.C. 4301.69(B) requires a mens rea of knowledge. See Lesnau v. Andate Enterprises, Inc. (2001), 93 Ohio St.3d 467, 473. In Gressman v. McClain (1988),40 Ohio St.3d 359, 363, the Supreme Court of Ohio concluded that R.C.4301.22(B), which stated that no sales be made to an intoxicated person, required a showing of actual knowledge of intoxication and that constructive knowledge would not suffice.[1] The Supreme Court stated that generally a person has knowledge of an existing condition when his or her relation to, association with, control over or direction of such condition gives him or her actual personal information concerning it. Id.
Here, the legislature specifically chose to include the word "knowingly" in R.C. 4301.69(B). In addition, the legislature specifically chose to use the words "knows or has reason to know" in other subsections of R.C. 4301.69. See R.C. 4301.69(C) and (D)(1). Hence, we interpret this to mean that the legislature, in specifically not including in R.C. 4301.69(B) the words "or has reason to know," meant that one must show actual knowledge under R.C. 4301.69(B). We note that the Supreme Court in Lesnau interpreted that the word "knowingly," as used in R.C. 4399.18(A)(3), a statute not at issue in the present case, as encompassing the standard "know or have reason to know." Lesnau at paragraph two of the syllabus, 473. The Supreme Court reached this conclusion by reading R.C. 4399.18(A)(3) in pari materia with R.C. 4301.69. This is because R.C. 4399.18(A)(3) stated, in effect, that a person has a cause of action against a permit holder for injury caused by the negligent actions of an intoxicated person occurring off the premises if the permit holder "knowingly" sold an intoxicating beverage to a person in violation of R.C. 4301.69. Hence, the Supreme Court looked to R.C.4301.69 in order to interpret the word "knowingly" as used in R.C.4399.18(A)(3).
The Supreme Court stated that R.C. 4301.69(B), (C), (D), (E) and (F) used the words "knowingly" and "knows or has reason to know" interchangeably. Id. at 473. However, we view this statement in the context of the issue before it. The Supreme Court was interpreting R.C.4399.18(A), which refers to R.C. 4301.69 as a whole. Hence, the Supreme Court noted that as a whole, R.C. 4301.69(B), (C), (D), (E) and (F) use the words "knowingly" and "knows or has reason to know" interchangeably.[2] The Supreme Court concluded, therefore, that the term "knowingly," as used in R.C.4399.18(A)(3) and which references R.C.4301.69 as a whole, included the standard "has reason to know."
In the case at bar, we interpret only R.C. 4301.69(B). As discussed above, the legislature intended that the term "knowingly," as used in R.C. 4301.69(B), means actual knowledge. Therefore, we agree with appellant that actual knowledge, as opposed to constructive knowledge (i.e., should have known), must be shown under R.C. 4301.69(B).
In the case at bar, there was no direct evidence that Mr. Tabone actually knew that the other two underage persons possessed or consumed beer in the bar. However, actual knowledge can be shown through circumstantial evidence. In VFW Post 8586, supra at 82, the Supreme Court stated there was no requirement that a violation be proven by direct evidence and that the commission was permitted to draw reasonable inferences based on the evidence. See, also, Glossip v. Liquor Control Comm. (July 24, 2001), Franklin App. No. 00AP-1074, unreported at 6-7.
The evidence in the case at bar is as follows. Agent Campbell testified that as he was taking Heather Grant to the bar in order to identify the bartender, he observed two youthful males drinking what appeared to be draft beer. (Tr. 9-10.) The agent identified himself to the two young men, Ryan Spahn, age 20, and Brandon Cole, age 19. Id. at 10, 35, 42. Agent Campbell testified that the young men were standing, "at a profile" to the bar, approximately two feet from the bar and near the opening to get behind the bar. Id. at 10-11, 15. He stated that the bartenders were "right there," and nothing was obstructing the employees' view of the two young men. Id. at 11. There were people sitting at the bar. Id. at 15. The bar was "fairly crowded." Id. at 11. Agent Campbell stated that "neither [of the two men] were marked high. In my opinion, the bartender * * * should have noticed that." Id. He further testified that the two men "looked very, very, youthful * * *, and they weren't marked high at all. [The bartender and the security personnel] should have been able to tell that they were underage and then done something about it." Id. at 15-16.
Heather Grant testified that the two young men were standing by the bar, close to the "little opening" to get behind the bar, with their backs to the bar. Id. at 23.
Mr. Spahn testified that a friend's brother got the beer for him. Id. at 35. Mr. Spahn stated that he and Mr. Cole were standing about three or five feet from the bar, with his back to the bar, and the only thing obstructing the view of them were the people standing between them and the bar. Id. at 36, 39. He stated that he could probably be seen from the bar. Id. at 39. Mr. Spahn testified that he had been in the bar for twenty minutes and had had the beer for five minutes prior to the agents catching him. Id. at 40. He had not been marked as being overage. Id.
Mr. Cole testified that he was standing about four or five feet from the opening to behind the bar, with his back to it. Id. at 43. Mr. Spahn, the people at the bar, and people walking by obstructed his view of the bartender. Id. Mr. Cole stated that he probably had the beer for about ten minutes at the most and that he had seen bouncers roaming around. Id. at 44, 47. Mr. Cole testified that he and Mr. Spahn had tried to conceal the beer, and he would turn away from the bouncers when they came by. Id. at 47-48. Mr. Cole stated that the bar was "pretty dark." Id. at 48.
Mr. Tabone testified that he had a "full bar" that night. Id. at 62. When being questioned by the agent, Mr. Tabone relayed that he had not seen the two men drinking. Id. at 61-62. He testified that it was a rather busy evening, and he was taking care of customers. Id. at 62. He stated that all of the stools at the bar were filled and that there were people standing between the stools. Id. at 64. Mr. Tabone stated that he had not served the two men. Id. at 63-64.
There is little evidence from which to infer that Mr. Tabone knew Mr. Spahn and Mr. Cole were underage and that he knowingly allowed them to possess or consume beer. The only evidence that could be used to infer such knowledge was the evidence that Mr. Spahn and Mr. Cole were, at the nearest, two feet from the bar, with beer, for about five to ten minutes. However, the bar was fairly busy that night, it was dark, and the two men were trying to conceal the beer from the bouncers and bartenders.
The common pleas court correctly stated that actual knowledge need not be proven by direct evidence and that the commission was permitted to draw reasonable inferences from the evidence. (Decision at 6.) However, the court went on to cite the evidentiary bases for its conclusion that actual knowledge existed. The common pleas court stated that the agents were able to identify three underage drinkers within minutes of walking in the door. Id. The common pleas court also stated that the evidence showed that Mr. Tabone knew Heather Grant had been drinking and was underage; therefore, it was reasonable to infer that Mr. Tabone or some other employee also knew that Mr. Spahn and Mr. Cole were underage and drinking as well. Id. at 7. This decision was erroneous.
First, the common pleas court's conclusions are based on a constructive knowledge standard — that Mr. Tabone or another employee should have known that the two young men were underage and possessed and/or consumed beer. This is not the standard to be applied. In addition, even if Mr. Tabone knew that Heather Grant was underage and drinking, it does not reasonably follow that he or another employee therefore knew that Mr. Spahn and Mr. Cole were doing the same. This is not a reasonable inference.
At best, it could be said the evidence established that an employee should have known that the young men possessed and/or consumed beer. Again, this is not the standard. Further, the circumstantial evidence was not probative or substantial enough to support an inference of actual knowledge. Hence, the common pleas court erred as a matter of law and abused its discretion in concluding that Violation No. 3 was supported by reliable, probative and substantial evidence and was in accordance with law.
Appellant also argues that the commission has an unwritten policy that significantly impacted its decision to revoke appellant's permit and that the commission failed to consider mitigating circumstances in imposing the penalty of revocation. However, we do not reach these arguments given our disposition of the third violation. Because the common pleas court erred in affirming the commission's finding of a violation of R.C.4301.69(B), the case will be remanded to the commission for a reconsideration of an appropriate penalty in light of this. See Ohio Real Estate Comm. v. Aqua Sun Invest., Inc. (1995), 101 Ohio App.3d 221,225-226 (the duty regarding the penalty is one peculiarly within the discretion of the trier of fact); Linden Med. Pharmacy, Inc. v. Ohio State Bd. of Pharmacy (May 8, 2001), Franklin App. No. 00AP-641, unreported, discretionary appeal not allowed in (2001), 93 Ohio St.3d 1418.
For all of the above reasons, appellant's assignment of error is overruled as to Violation No. 2 under R.C. 4301.69(A), and sustained as to Violation No. 3 under R.C. 4301.69(B). The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to such court with instructions to remand the matter to the commission for reconsideration of an appropriate penalty in light of our decision.
Judgment affirmed in part and reversed in part; and cause remanded with instructions.
PETREE, J., and BRYANT, P.J., concur.
[1] Gressman was distinguished in Lesnau at paragraph two of the syllabus.
[2] R.C. 4301.69(B), (D)(2), (E) and (F) use the term "knowingly" while R.C. 4301.69(C) and (D)(1) use the terms "knows or has reason to know."